825 F.2d 406
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FINALCO, INC., Plaintiff-Appellee,
v.
W. P. BARLOW, Jr., Defendant-Appellant.
 No. 86-2628
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1987.
Decided July 21, 1987.
 
 Jack McKay (Shaw, Pittman, Potts & Trowbridge, on brief), for appellant.
 Randall Louis Sarosdy (C. Fairley Spillman; Akin, Gump, Strauss, Hauer & Feld, on brief), for appellee.
 Before HALL and WILKINS, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 W. P. Barlow, Jr. appeals from an order of the district court granting summary judgment in favor of Finalco, Inc. ('Finalco') in a diversity suit brought by Finalco seeking payments due pursuant to a settlement agreement and promissory note executed by Barlow. We affirm.
 
 I.
 
 2
 In December, 1983, Barlow, an attorney associated with Barlow and Lippe, a law firm in Texas, purchased computer equipment from Lease-Pro, Inc. ('Lease-Pro'), a computer broker. Lease-Pro had bought the equipment from Finalco, a Virginia based company. Having made this purchase, Barlow leased the equipment back to Finalco. This arrangement had tax benefits for both Barlow and Finalco.
 
 
 3
 Barlow agreed to pay Lease-Pro for the equipment on an installment basis. Subsequently, Lease-Pro assigned its interest in this debt to Finalco. By July, 1985, Barlow was in default on the obligation and reached an agreement with Finalco to restructure the debt. The terms of the original debt were set aside. As part of the settlement agreement, Barlow agreed to pay Finalco $10,000 upon execution of the settlement agreement, $450,000 on November 1, 1985[1], and $500,000 due on January 9, 1986. These obligations were listed in the settlement agreement and the last was evidenced by a promissory note.
 
 
 4
 Paragraph four of the settlement agreement is at the heart of this controversy, is dispositive of the rights of the parties upon the one disputed issue, and provides in pertinent part:
 
 
 5
 It is expressly understood and agreed that on the maturity date of any New Note, Barlow, at his sole option, may elect, in lieu of payment of the principal amount then due and owing thereon and the final interest payment, to sell, transfer and assign to Finalco all of his right, title and interest in the Equipment . . .
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 In the event of any election by Barlow pursuant to the terms of this paragraph 4, Barlow shall direct the Escrow Agent hereunder to deliver to Finalco a duly executed Sale and Release Agreement and Bill of Sale with respect to the Equipment to be sold to Finalco. In the event Barlow shall fail to transfer the subject Equipment to Finalco in satisfaction of his obligation(s) under each of the New Notes as provided herein on their respective maturity dates, and in the further event that Barlow shall otherwise be in default under any New Note, the Escrow Agent shall, upon Finalco's written request, promptly deliver to Finalco a Sale and Release Agreement and Bill of Sale executed by Barlow and dated as of the maturity date of each of the New Notes outstanding as of the date of such request.
 
 
 9
 Barlow paid the $10,000 and paid $12,000 for an extension but defaulted on the $450,000 due under the agreement and on the $500,000 note. He did not, however, exercise his option to transfer title to the equipment to Finalco. Finalco did not request such a transfer, but filed this suit. The district court awarded Finalco $950,000 plus interest and costs.
 
 II.
 
 10
 On appeal, Barlow contends that when the settlement agreement, the sale and release agreement and the bill of sale are read together, it is clear that the parties agreed that transfer of the property would be the exclusive remedy in the event of default. We do not agree.
 
 
 11
 The language of the settlement agreement reveals that transfer of the title does not occur automatically upon default. Instead, it occurs only when this remedy is triggered at the option of either party. Because there is no suggestion in the settlement agreement that either party is obliged to trigger this particular remedy, we reject Barlow's contention that the district court erred in concluding that the agreement between the parties provided at least two remedies for Finalco.
 
 
 12
 For the foregoing reasons, we accordingly affirm.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Finalco agreed to grant an extension to December 2, 1985, upon payment of $12,000